## ALBAUGH v T-N-T SPARK PLUG CO

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10416. Decided Feb. 17, 1930

Harvey E. Elliott, Cleveland, for Albaugh.

Lex Kintner, Cleveland, for Spark Plug Co.

VICKERY, PJ.

From the record, argument of counsel and statements of counsel in open court as well as the briefs filed, we learn that the plaintiff was employed upon a salary, for a fixed period of time, as General Manager of The T-N-T Spark Plug Company, the defendant below; that prior to the making of the contract which gave rise to the present cause of action, the plaintiff in error had filed a voluntary petition in bankruptcy, and among the assets was one share of stock that he held in The T-N-T Spark Plug Company. Subsequent to the filing of the voluntary petition in bankruptcy by the plaintiff in error his relationship as an employee continued after said bankruptcy proceedings, and inasmuch as it was a contract for personal services, such a contract was not assignable either by voluntary assignment nor by action of law such as bankruptcy. The right to earn wages and to recover under such contract after the bankruptcy petition was filed, could not be affected by the bankruptcy proceedings, nor was it affected by the proceedings in bankruptcy; that after the petition in bankruptcy had been filed and the plaintiff in error was declared a bankrupt, he was entitled thereafter to his earnings under a contract for personal services, and that was not an asset which would go to the trustees in bankruptcy. Had there been any money that was due him under the contract at the time of the filing of the petition in bankruptcy that, of course, would have been a chose in action and would have been transferred to the trustee in bankruptcy when the plaintiff was declared a bankrupt, but there is nothing in this record to show that there was anything due, and it was incumbent upon the defendant below, if it wanted to use that as a defense, to show what, if anything, was due prior to the bankruptcy proceedings, and there is nothing in the evidence to show that anything was due.

It is claimed in this case that the plaintiff had a contract with the defendant below that was coupled with an interest. Well, that does not make it any less a contract for personal services. It simply prevents the other side from discharging him, and possibly that was the reason for the contract that was made after the bankruptcy proceedings, out of which grew this lawsuit. The plaintiff below having a contract for at least a year and the defendant wishing to get rid of him, it, subsequent to the bankruptcy proceedings, entered into a written contract with plaintiff by the terms of which it was provided that if and in consideration of the plaintiff below waiving and giving up his right to his contract

which lasted over quite a period of time subsequent to the filing of the petition in bankruptcy, the defendant would give him the sum of $1500, $375 of which was payable in cash, the receipt of which is acknowledged in the contract itself; and it agreed to give him a bankable note for $375, which apparently it gave and which apparently was paid when it became due. It likewise agreed that the additional $750 was to be paid out of earnings made by the T-N-T Spark Plug Company out of sales of the spark plugs, and the plaintiff in this action and the plaintiff below was to receive three cents per spark plug until the whole amount of $750 was paid. Of this sum it is admitted that $42.00 was paid, which left a balance of $708 due the plaintiff; and he alleges in his petition that The T-N-T Spark Plug Company had sold more than enough plugs, after the making of the contract and before the bringing of the suit, so that three cents a piece allowed to him had been earned by The T-N-T Spark Plug Company, and to this there does not seem to be any denial.

It is admitted in court that The T-N-T Spark Plug Company did sell more than enough spark plugs to have paid the $708 that was due on the $750 that was still remaining due, but the defense seems to be that in the same contract the plaintiff in error and the plaintiff below agreed that he would turn over and cause to be transferred to The T-N-T Spark Plug Company one share of stock that he held in said company, which said share of stock had been transferred to the trustees in bankruptcy as a part of the assets of the bankrupt, and the evidence shows that subsequently the share of stock was procured by The T-N-T Spark Plug Company at a sale by the trustee in bankruptcy of the assets of the bankrupt, and that at said sale the plaintiff below attempted to buy this stock in so as to turn it over to The T-N-T Spark Plug Company to comply with his contract, but that a Mr. Winkler for the Company bought the stock in at a price of $30.00 and that The T-N-T Spark Plug Company now has the stock and had it within the time prescribed in the contract when it should be turned over to it by the plaintiff and the defendant says that, inasmuch as the plaintiff did not turn the share of stock over to it, this failure under the contract operated as a forfeiture, and that the amount that would otherwise be coming to him would be forfeited to the company by him as liquidated damages.

We cannot follow such a spacious argument. The purpose of this contract with respect to this stock was to get it into the hands of The T-N-T Spark Plug Company and until that was done The T-N-T Spark Plug Company might hold up the payment of the amount that became due the plaintiff under his contract made subsequent to the filing of the petition in bankruptcy. Now if the company bought this stock in and was compelled to pay something for it and the record in this case shows it was compelled to pay $30.00, it cannot defeat the right of the plaintiff to recover under the contract by itself becoming the owner of this stock so as to prevent the plaintiff from turning it over to it and thus defeat him on his right to recover under the contract. At best it should be only allowed to counterclaim for the amount that it was compelled to pay for this stock, and it is uncontradicted in this record that that sum was $30.00. That being so, the writer of this opinion thinks that the plaintiff would be entitled to recover the difference between $708 and the $30, or $678, and can see no reason from this record and the arguments of counsel why the plaintiff is not entitled to recover that sum.

There is a long written contract and it involves other parties and other things, but this part of the contract is clear and concise, that the plaintiff had the right to work for the defendant for a period of time which he waived for the sum specified in the contract. There is nothing in the record to show that any part of that was earned prior to the proceedings in bankruptcy and, as already stated, a contract for personal services is not assignable. The plaintiff in this case could not have assigned his right to labor or to work for these people as Manager or in any other position, and if he had an interest in the contract so that the company could not fire him, that would be a basis and serve as a good consideration to support the contract in question. The contract having having been made,—and its terms are clear and explicit, and the amount is undisputed, —there is no reason in the judgment of the writer of this opinion why this should not have been recoverable; and the court erred in rendering a judgment for the defendant in error, defendant below.

The writer of this opinion thinks that the judgment of the court should have been for the plaintiff for the sum of $678, the full amount sued for less the $30, which the company had paid for this stock and had it kept out of the bidding and permitted the plaintiff to buy that stock in, it might not even have been entitled to recover that much, because if it was going to get this stock, it was its duty to keep its hands off and let the plaintiff buy it in so that he could comply with his terms of the contract, and when it "butted in," it did so at its peril. But the writer of this opinion thinks that the best it can possibly claim is the amount that it paid for this stock, and that amount is $30.00.

The writer of this opinion thinks that there should have been a judgment for the plaintiff in error for the sum of $678 and interest; but the majority of the court agreeing that the judgment should be reversed because it is manifestly against the weight of the evidence, yet think that the cause should be remanded to the trial court for a new trial. The judgment will, therefore, be reversed and cause remanded.

Sullivan and Levine, JJ, concur.